IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL CLAYTON CROWE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:03cv1159-MHT |
| | ) | (WO) |
| | ) | |
| GWENDOLYN MOSLEY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This 28 U.S.C. § 2254 petition for habeas corpus relief was filed by Michael Clayton Crowe ("Crowe") on November 25, 2003.  (Doc. No. 1.)  On March 8, 2004, Crowe filed an amendment to the petition.  (Doc. No. 13.)  In his petition as amended, Crowe challenges his convictions on fourteen counts of second-degree rape and three counts of second-degree sodomy.  At trial in the state court, Crowe was represented by N. Tracy Nickson and Tracy Birdsong.[1]  On May 1, 2006, the trial court sentenced Crowe to 20 years' imprisonment on each count, with the sentences to be served consecutively.  Thus, Crowe was sentenced to a total of 340 years' imprisonment.

On May 30, 2000, A.C.G. Pettus ("Pettus"), post-sentencing counsel, filed a motion for new trial, asserting that the sentence was voluminous and prejudicial, that the judge had

---

[1] The record indicates that both Mr. Nickson and Ms. Birdsong represented Crowe during the initial criminal proceedings, but that only Ms. Birdsong represented Crowe at trial.

exhibited signs of impropriety, and that trial counsel was ineffective for failing to file a motion for recusal or a motion for change of venue and for failing to object to the victim's reference to the judge by his first name.  (State's Ex. RX-1, C. 66-67.)  Counsel also filed on Crowe's behalf a motion for reconsideration and a motion to recuse.  (*Id.*, C. 64-65, 70-71.)  After conducting a hearing, Judge Sibley Reynolds denied the motions. (*Id.*, C. 4.)

On November 9, 2000, Crowe filed a direct appeal to the Alabama Court of Criminal Appeals, raising the following issues:

(1)   Whether trial counsel was ineffective?

(A)   The failure to file any documents of record, including but not limited to notice of appearance, request for discovery, motion to suppress or motions in limine, constitutes ineffective assistance of counsel.

(B)   Defense counsel's lack of a motion in limine was ineffective assistance of counsel that allowed the prosecution to make reference to, and show in the courtroom, what was alleged to be xerographic copies of one of victim's diaries that was lost by the prosecution.

(C)   Defense counsel was ineffective by allowing pre-trial motions by the state to go unanswered by document or the record.

(D)   Defense counsel was ineffective when it failed to properly bring into evidence alleged prior charges of sexual misconduct brought by victim that were either dismissed or no true billed.

(E)   Defense counsel was ineffective when it failed to have a diary excluded even though there was testimony that there were three (3) overlapping diaries by victim that could have contained exculpatory evidence not brought into issue: two

2

were lost, one by the state; one by the victim.

(F)    Defense counsel was ineffective when it failed to have a diary excluded even though there was testimony that the diary was not contemporaneous.

(G)    Defense counsel was ineffective by failing to file a motion to have the trial judge recuse.

(H)    Defense counsel was ineffective when it failed to file a motion for a change of venue.

(I)    Trial counsel was ineffective for spending less than half an hour with the defendant in case preparation.

(J)    Defense counsel, under the totality of the circumstances, was ineffective and additional action by defense counsel would have changed the outcome.

(K)    Under the totality of the circumstances, defense counsel was ineffective and proper action would have changed the outcome of Mr. Crowe's trial.

(2)    Whether the trial judge should have recused himself?

(3)    Whether the victim was coerced into bringing charges in this matter?

(4)    Whether the unauthenticated letters allegedly written by defendant should have been admitted into evidence?

(5)    Whether the victim's non-contemporaneous diary should have been admitted into evidence?

(6)    Whether the defendant was prejudiced by improper testimony, tainted and/or improperly admitted evidence, and the action and attitude of the trial judge?

(7)    Whether the sentence levied on the defendant was reasonable under the totality of the circumstances?

3

(State's Ex. RX-2.)  On August 24, 2001, the Alabama Court of Criminal Appeals affirmed the judgment of the trial court.  (State's Ex. RX-4.)  The Alabama Supreme Court subsequently denied Crowe's petition for a writ of certiorari.  (State's Ex. RX-8.)

Crowe subsequently filed a state post-conviction petition, pursuant to ALA.R.CRIM.P. 32, in which he asserted the following claims:

    (1)    Trial counsel was ineffective for failing to move for the recusal of the judge and failing to ensure that Crowe understood the sentencing possibilities.

    (2)    He was not tried and sentenced before a fair and impartial tribunal.

    (3)    His sentence was constitutionally disproportionate to the crime and constitutes cruel and unusual punishment.

(State's Ex. RX-9, C. 15-26.)  Crowe also filed a motion to disqualify Judge Reynolds from the Rule 32 proceedings.  (*Id.*, C. 5-7.)  The state court granted the motion to recuse "to the extent that Judge Reynolds recused himself" and assigned the case to another judge.  (*Id.* C. 29.)  The state court thereafter summarily dismissed the state post-conviction petition.  (*Id.*, C. 51.)  Crowe appealed to the Alabama Court of Criminal Appeals.  (State's Ex. RX-10.)  On April 18, 2003, the state appellate court affirmed the trial court's dismissal of the Rule 32 petition.  (State's Ex. RX-12.)  On August 15, 2003, the Alabama Supreme Court denied Crowe's petition for a writ of certiorari.  (State's Ex. RX-16.)

On November 25, 2003, Crowe filed a petition for habeas corpus relief in this court. In his federal petition as amended, Crowe asserts the following claims:

    (1)    Petitioner's right to a trial before a fair and impartial tribunal was

violated.

(2)     Petitioner's counsel was ineffective in failing to protect petitioner Crowe's right to due process and to trial before a fair and impartial tribunal.

(3)     Petitioner's sentence is constitutionally disproportionate.

(4)     Petitioner lacked effective assistance of counsel with respect to the plea bargaining process.

(Doc. No. 1.)

On June 11, 2007, this court held an evidentiary hearing concerning whether counsel's actions during the plea bargaining process constituted ineffective assistance of counsel.  (Doc. No. 28.) Upon consideration of the § 2254 petition, the answers of the Respondents, Crowe's responses to the answers, the opinions of the state courts, as well as the evidence presented during the June 11, 2007, evidentiary hearing, the court concludes that the petition should be denied.

## II.  DISCUSSION

### A.  The Plea Offer

Crowe's assertion that trial counsel was ineffective for failing to advise him of the consequences of continuing to reject the State's offer of 15 years' imprisonment was raised in

his Rule 32 petition.[2]  (State's Ex. RX-9, C. 21.)  The Alabama Court of Criminal Appeals, however, determined that Crowe's claim that trial counsel was ineffective for failing to advise Crowe of the consequences of rejecting the State's plea offer was procedurally barred pursuant to ALA.R.CRIM.P. 32(a)(3) & (5).  (State's Ex. RX-12, p. 2.)  Federal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim finds that its judgment rests on a procedural bar.  *See Harris v. Reed*, 489 U.S. 255, 260-61, 263 (1989); *Hill v. Jones*, 81 F.3d 1015, 1022 (11th Cir.1996).

Nonetheless, there is no dispute that Crowe's contention that post-sentencing counsel was ineffective for failing to raise in a motion for new trial a claim that trial counsel was ineffective for failing to advise Crowe of the consequences of rejecting the State's plea offer is not procedurally barred in this court.  (Doc. No. 9, pp. 26-27.)  Although Crowe raised this ineffectiveness-of-post-sentencing-counsel claim in his Rule 32 petition and on appeal, neither the Elmore County Circuit Court nor the Alabama Court of Criminal Appeals addressed this ineffectiveness claim.  The State concedes that Crowe's claim that post-sentencing counsel was ineffective is due to be heard on the merits by this court.  (Doc. No. 9, p. 27.)

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  To prevail on a claim of ineffective assistance of counsel, a movant must satisfy both

---

[2] Specifically, Crowe asserted that his "counsel breached the duty to properly advise him regarding his sentencing options . . . [and that he] was prejudiced by that breach because he rejected the offered plea bargain, took his case to trial and received an aggregate sentence of 340 years."  (State's Ex. RX-9, C. 21.)  In addition, he argued that a "motion relating to this instance of ineffective assistance of counsel could have been filed by post-sentencing counsel" and that post-sentencing counsel was ineffective for failing to raise this claim during post-judgment proceedings.  (*Id.*)

prongs of the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).   The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687-89.   The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense.  *Id*. at 687.

To succeed on a claim of ineffective assistance, a movant must first establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance.  *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

There is a strong presumption that counsel's performance was reasonable and adequate, and great deference is shown to choices dictated by reasonable trial strategy.  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689.  Review of an ineffective-assistance-of-counsel claim is conducted from the perspective of defense counsel, based on facts "as they were known to counsel *at the time of the representation*."  *U.S. v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*, 466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland*, 466

U.S. at 689.

The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687.  Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of any constitutionally protected right. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).  To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice."  *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

Unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687.  Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one."  *Id*. at 697.  *See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of appellate

counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

On June 11, 2007, this court held an evidentiary hearing concerning whether post-sentencing counsel's failure to assert that trial counsel was ineffective for failing to advise him of the consequences of rejecting the State's repeated plea offers constituted ineffective assistance of counsel. (Doc. No. 28.) As might be expected, the testimony of Crowe and post-sentencing counsel cannot be reconciled. During the hearing, Crowe's post-sentencing counsel, Andrew Christopher G. Pettus ("Pettus"), testified that he did "not think that [Crowe] brought . . . up [the plea bargain issue] before oral argument on the post judgment motions." (Doc. No. 28.)[3] Pettus admitted that, prior to filing a motion for new trial and other post-trial motions, he did not ask Crowe whether he was offered a plea agreement. (*Id*.) Pettus recalled that *after* oral argument on the post-trial motions Crowe told him that trial counsel had advised that he should not accept the State's offer of three counts of second-degree rape with fifteen years' imprisonment on each count to be served concurrently because he could get a "better deal." (*Id*.) Pettus explained that he did not raise this claim in his appellate brief because he did not believe that the claim would be successful on direct appeal. (*Id*.)

[3] The court notes that the June 11, 2007, evidentiary hearing was not transcribed. However, an audio-recording of the proceeding is available. (FTR, 06112007 at 10:01-10:17 a.m. and 2:00-3:12 p.m.)

Crowe's recollection of the events is somewhat different from post-sentencing counsel's account of their discussion.  After Crowe testified that Nickson told him on "plea day" that "if [he] carried it to trial, 15 years was all [he] could get," the following transpired:  MR. GOGGANS:  Did you have any discussions with Chris Pettus about what had transpired with respect to the plea bargaining process?

> PETITIONER:        Yes, sir.  I told him what Tracy Nixon had told me, ya' know, at plea date and he told me that wasn't correct.

> MR. GOGGANS:     Do you remember when you told him that?

> PETITIONER:        Tracy, uh . . .

> MR. GOGGANS:     Mr. Pettus.

> PETITIONER:        No, sir.  I don't.

> MR. GOGGANS:     When you say, he told you "that wasn't correct," what wasn't correct?

> PETITIONER:        That the, that I could have only got 15 years.

> MR. GOGGANS:     He told you that wasn't correct.

> PETITIONER:        He said that on a Class B felony it was 2 to 20.

> MR. GOGGANS:     Do you remember at what point in your conversations with Mr. Pettus that first came up?

> PETITIONER:        It was when we first talked.

(*Id.*)

After careful consideration, the court concludes that Pettus' testimony regarding the timing of his conversation with Crowe concerning the plea offer is more reliable than Crowe's recollection of the events.  In making its credibility determination, the court recognizes that it

is improper to determine credibility based on the "status" of a witness. *U.S. v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Thus, neither Crowe's status as a convicted felon nor his counsel's status as a lawyer is determinative. Rather, the court must weigh the testimony of these two witnesses in light of all the facts, taking into account their interests, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand. *Gallego v. U.S.*, 174 F.3d 1196, 1998 (11th Cir. 1999).

First, the court notes that Crowe gave inconsistent testimony concerning when he informed post-sentencing counsel about trial counsel's advice. Crowe initially testified that he did not remember when he and Pettus discussed trial counsel's representation that he "would only get fifteen years"; however, upon further questioning, Crowe stated that, when he and Pettus "first talked," Pettus told him that trial counsel's advice concerning the range of punishment was incorrect. (*Id.*) In addition, it is obvious that Crowe has a strong interest in the outcome of this case. At the time of his sentencing he was 39 years old, and he received an aggregate sentence of 340 years' imprisonment sentence. (State's Ex. RX-1, C. 2-3.) Thus, Crowe's inconsistent testimony and obvious interest in a favorable outcome in this proceeding militate against his credibility. Moreover, post-sentencing counsel has no interest in the outcome of this case which undercuts his credibility.

In short, after careful consideration of the inconsistencies in Crowe's testimony, his interests in the proceeding, and the other *Gallego* factors as set out above, the court concludes that Crowe's testimony indicating that he and post-sentencing counsel discussed trial counsel's failure to inform him of the correct range of punishment and the consequences of continuing

11

to trial prior to Pettus' filing of post-trial motions is not worthy of belief.  Furthermore, the court credits the testimony of post-sentencing counsel with respect to this matter.

Because the court credits post-sentencing counsel's testimony that he was not aware of the plea agreement issue until after oral argument on the motion for a new trial, this court cannot conclude that Pettus' failure to raise this ineffectiveness-assistance-of-trial-counsel claim in a post-trial motion fell below an objective standard of reasonableness.  *See Strickland*, *supra*.  In Alabama, a "motion for a new trial must be filed no later than thirty (30) days after sentence is pronounced."  Ala.R.Crim.P. 24.1(b).  The state court sentenced Pettus to an aggregate sentence of 340 years' imprisonment on May 1, 2000.  Pettus filed a motion for a new trial on May 30, 2000, and a hearing on the motion was conducted on June 21, 2000.  Consequently, the time for filing this ineffectiveness claim expired prior to the time that Crowe informed Pettus of trial counsel's advice concerning the State's plea offer and the consequences of proceeding to trial.  Thus, it is clear that the filing of an amendment to the motion for a new trial would have been untimely under these circumstances.

Moreover, the court concludes that post-sentencing counsel was not ineffective for failing to raise this ineffective-assistance-of-trial-counsel claim on direct appeal.  Under Alabama law an ineffective-assistance-of-counsel claim must be presented in a motion for a new trial filed before the 30-day jurisdictional time limit set by ALA.R.CRIM.P. 24.1(b) expires in order to preserve the claim on direct appeal.  *Ex parte Ingram*, 675 So. 2d 863, 865 (Ala. 1996).  *See e.g. Kelley v. State*, __ So.2d __, 2007 WL 1866749 (Ala. Crim. App. June 29, 2007) (Applying *Ingram* to conclude that because a defendant did not file a direct appeal an

ineffectiveness of counsel claim was properly raised for the first time in a post-conviction motion).   Because the ineffective-assistance-of-trial-counsel claim was not preserved at trial, appellate counsel cannot be deemed ineffective for failing to raise this contention on appeal. *See Atkins v. Singletary*, 965 F.2d 952, 957 (11ᵗʰ Cir. 1992); *Breedlove v. Moore*, 74 F.Supp.2d 1226, 1253 (S.D. Fla. 1999) (citing *Card v. Dugger*, 911 F.2d 1494, 1520 (11ᵗʰ Cir. 1990)).

In Alabama, when a defendant asserts an ineffective-assistance-of-trial-counsel claim, and the claim "cannot be *reasonably* presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala.R.Crim.P., the proper method for presenting that claim for appellate review is to file a Rule 32, Ala.R.Crim.P., petition for post-conviction relief." *Ex parte Ingram*, *supra* (emphasis added).   Alabama law provides that, when the facts surrounding an ineffective-assistance-of-trial counsel claim occurred at trial and newly-appointed counsel does not have the benefit of a trial transcript, an ineffectiveness claim cannot be "reasonably presented" by counsel in a motion for a new trial or on direct appeal.   *See Bracknell v. State*, 883 So. 2d 724, 726 (Ala.Crim.App. 2003); *V.R. v. State*, 852 So.2d 194, 202-03 (Ala.Crim.App. 2002) ("It is neither reasonable nor practical to expect newly appointed appellate counsel to raise an ineffective-assistance-of-trial-counsel claim without the benefit of a trial transcript to document and support a defendant's allegations as to what occurred during trial.").[4]   In this case, however, if Crowe had informed post-sentencing counsel in a

---

[4] The court notes that in *Rash v. State*, No. CR-05-1323, 2006 WL 3123521, *2 (Ala.Crim.App. 2006) (unpublished), the state court determined that the defendant's claims that trial counsel failed to investigate an insanity defense and failed to advise him of a plea offer from the state could not have reasonably been presented in a motion for a new trial.   However, the circumstances are distinguishable from Crowe's case, as it is clear that the primary issue in *Rash* concerned the defendant's mental stability.

timely manner about trial counsel's advice that "he would only get fifteen years", trial counsel could have "reasonably presented" Crowe's ineffective-assistance-of-trial-counsel claim concerning the plea offer in his motion for a new trial. While there is no dispute that post-sentencing counsel did not have the benefit of a transcript of the criminal proceedings prior to filing the motion, a transcript would not include a discussion between Crowe and his trial counsel about the State's plea offer. Thus, a transcript would not have benefitted counsel with respect to this issue.[5] Therefore, to the extent Crowe contends that the lack of a trial transcript demonstrates cause for his failure to preserve his claim during trial, his contention is unavailing. *See Coleman v. Thompson*, 501 U.S. 722 (1991).

The court further concludes that Crowe has failed to demonstrate that he suffered prejudice as a result of counsel's failure to raise the plea offer issue at trial or on appeal. During the evidentiary hearing in this court, Birdsong testified that she and Crowe reviewed the indictment and discussed the range of punishment for each offense. Although no evidence refutes Crowe's testimony that Nickson told him to reject the State's offer of 15 years' imprisonment on plea day because he could receive a "better deal," both Tracy Birdsong and Jennifer Jordan ("Jordan"), the prosecutor, testified that, at the close of the State's case, Jordan told Birdsong in the presence of Crowe that "fifteen was still on the table." Birdsong stated that she and Crowe briefly discussed the renewed offer and decided to continue with trial.

---

[5]The court also notes that post-sentencing counsel testified that he "wished" that he had asked whether the State had offered Crowe a "better deal" prior to filing the motion for a new trial. Thus, it is clear from post-sentencing counsel's testimony that, if Crowe had informed Pettus of trial counsel's advice concerning the plea offer, Pettus would have included this ineffective-assistance-of-trial-counsel claim in a motion for a new trial.

Therefore, even assuming that Nickson incorrectly advised Crowe concerning his possible sentence during the initial plea negotiations, the evidence demonstrates that, even after Crowe was properly informed of the range of punishment for each offense, he rejected the State's renewed plea bargain offer and chose to continue with trial.  Therefore, Crowe has failed to demonstrate that he suffered prejudice as a result of Nickson's advice during the initial plea bargaining process. *See Strickland*, *supra.*  For all these reasons, Crowe is entitled to no relief with respect to this ineffective-assistance-of-counsel claim.

### B.  The Adjudicated Claims

Crowe's claims concerning a constitutionally disproportionate sentence, his right to a trial before a fair and impartial tribunal, and trial counsel's failure to submit a motion for recusal were addressed on the merits by the Alabama Court of Criminal Appeals.   Crowe's request for federal habeas relief on these claims is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act.  *Price v. Vincent*, 538 U.S. 634 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402 (2000).  Under the provisions of 28 U.S.C. § 2254(d), with respect to claims adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Court held that:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. [at] 405-406." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853 (2003). Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams,* [529 U.S. at 409]." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). A federal district court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective

16

reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d) . . ." 538 U.S. at 636, 123 S.Ct. at 1851.

### (1)    The Due Process Claim

Crowe asserts that he was denied his constitutional right to a fair and impartial tribunal.

On direct appeal, Crowe asserted that Judge Reynold's should have recused himself from the proceedings because (1) the judge represented the victim's mother during divorce proceedings, (2) the victim referred to the judge as "Sibley" during the proceedings, (3) the judge presided over the juvenile action wherein the victim was declared a "child in need of supervision"and placed in a juvenile facility.  Crowe also asserts that trial counsel was ineffective for failing to file a motion to recuse before or during trial.

On August 24, 2001, the Alabama Court of Criminal Appeals determined that Crowe had "presented no evidence whatsoever to support his allegations that any of the [alleged] circumstances resulted in any bias on the part of Judge Reynolds."[6]  (Gov's Ex. RX-4, pp. 3-4.) The state court also concluded as follows:

> Contrary to [Crowe's] contention, Judge Reynold's previous representation of C.C.'s mother in her divorce, some 12 years before the present case when C.C. was only an infant; his issuance of a restraining order against both the appellant and C.C.; and C.C.'s reference to Judge Reynolds as "Sibley" during the trial do not reflect a "personal bias" on the part of Judge Reynolds,

---

[6] The court notes that the Alabama Criminal Appeals did not conclude that Crowe's due process claim was procedurally barred from review due to trial counsel's failure to submit a motion to recuse at an earlier point in the proceedings. (State's Ex. RX-4.)  Therefore, this court makes no determination as to whether this due process claim is procedurally barred or whether Crowe  has demonstrated cause for any default.  The court, however, recognizes that

> [i]n light of the Canons governing judicial conduct, [it is] not believ[able] that an attorney conducting a reasonable investigation would consider it appropriate to question a judge ... about the judge's lack of impartiality. . .  [B]oth litigants and attorneys should be able to rely upon judges to comply with their own Canons of Ethics. A contrary rule would presume that litigants and counsel cannot rely upon an unbiased judiciary, and that counsel, in discharging their Sixth Amendment obligation to provide their clients effective professional assistance, must investigate the impartiality of the judges before whom they appear.   Such investigations, of course, would undermine public confidence in the judiciary and hinder, if not disrupt, the judicial process – all to the detriment to the fair administration of justice.

*Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995).

and did not create a reasonable question as to Judge Reynold's impartiality. Judge Reynold's representation of C.C.'s mother was in no way connected to the present case and, therefore, did not fall within the "matter in controversy" provision of Canon 3(C). *See*, *e.g.*, *Grider v. State*, 766 So. 2d 189 (Ala. Crim. App. 1999) (upholding trial court's denial of motion to recuse where judge had previously represented the defendant in two criminal cases and had represented the opposing party in a civil case against the defendant). The issuance of the restraining order, although connected to the present case, in no way indicates that Judge Reynolds had a "personal bias" against the defendant. The appellant has not shown, nor even alleged, that the restraining order was not due to be granted, i.e., that Judge Reynolds improperly granted the order. In addition, C.C.'s only reference to Judge Reynolds as "Sibley" during the trial came in direct response to a question by the prosecutor about who had told her to stay away from [Crowe]. C.C. stated that, after the restraining order had been issued, her probation officer had told her that "Sibley" had said that if she continued to see [Crowe], "he was going to make it harder" on her. (R. 71.) Clearly, Judge Reynold's statement that C.C. had probably referred to him as "Sibley" because the juvenile probation officer always referred to him as "Sibley," was correct. C.C.'s reference to Judge Reynolds as "Sibley" in no way reflects a "personal bias" on the part of Judge Reynolds.

Finally, as noted above, there is nothing in the record, other than [Crowe's] bare allegations, to suggest that Judge Reynolds presided over the juvenile action in which C.C. was declared a child in need of supervision or that Judge Reynolds placed C.C. in a juvenile facility for the purpose of "brainwashing" and "coercing" C.C. into prosecuting [Crowe], as [Crowe] contends. . . . Even assuming, however, that Judge Reynolds had presided over the juvenile action and did place C.C. in a juvenile facility, this is not sufficient to require recusal. As noted previously, [Crowe] has the burden of showing a "personal bias," not merely a "judicial bias." [Crowe's] argument in this regard is based on judicial bias, he has alleged no personal or extra-judicial bias.

(State's Ex. RX-4, pp. 6-7.) The court further concluded that, "because there were no grounds

for recusal, [Crowe's] trial counsel could not be ineffective for not filing a motion to recuse

before or during the trial." (*Id*., p. 7.)

There does not exist a Supreme Court case with materially indistinguishable facts as in

Crowe's case, and the state court's decision does not apply a rule that contradicts governing federal law.  Therefore, the state appellate court's rejection of this due process claim was not contrary to actual Supreme Court decisions.

Next, this Court must determine whether the Alabama Court of Criminal Appeal's decision to reject the due process claim was an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.  The clearly established law on this issue is set forth in *Bracy v. Gramley,* 520 U.S. 899, 904-05 (1997).

The Due Process Clause requires a fair proceeding "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy,* 520 U.S. at 904-05 (citations omitted).  To prevail on a judicial bias claim, a petitioner must demonstrate actual bias or prejudice as distinct from a mere appearance of bias or prejudice.  *See Bell v. Haley,* 2000 WL 33682804, *16 (M.D. Ala. 2000) ("[J]udicial bias or prejudice rising to a level that violates due process must stem from a predisposition against the defendant that is actual, *see Nichols v. Sullivan,* 867 F.2d 1250, 1254 (10th Cir.), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3169 (1989); *Dyas v. Lockhart,* 705 F.2d 993, 996 (8th Cir.), *cert. denied,* 464 U.S. 982, 104 S.Ct. 424 (1983), or that is readily presumed from a judge's conduct or comments, or connection to one of the participants, *see* [*Bracy v. Gramley*], *supra*; *DelVecchio v. Illinois Dept. of Corrections,* 31 F.3d 1363, 1380 (7th Cir.1994) (en banc) (Noting, however, that the 'bad appearances' alone do not rise to the level of a due process violation; instead the judge must be faced 'with circumstances that present "some [actual] incentive to find one way or the other" or "a real possibility of bias."'), *cert. denied,* 514 U.S. 1037, 115 S.Ct. 1404 (1995) .").

In this case, Crowe fails to present any evidence indicating the existence of actual bias or prejudice by Judge Reynolds.  Moreover, Crowe fails to submit any evidence from which this court could presume the existence of personal bias or prejudice constituting a due process violation.  Judge Reynold's representation of the victim's mother approximately twelve years prior to Crowe's trial does not demonstrate actual bias or prejudice.  His issuance of a temporary restraining order against Crowe and the victim and his involvement in the victim's juvenile probation proceedings in the course of his work as a judicial officer do not in any way indicate a personal bias or prejudice against Crowe.  Consequently, the state court's rejection of Crowe's due process claim was objectively reasonable. *See Williams*, *supra.*

This court likewise concludes that the state court's determination concerning Crowe's ineffective-assistance-of-counsel claim was not an unreasonable application of *Strickland v. Washington*, *supra*.  Given that Crowe failed to demonstrate a meritorious basis for Judge Reynold's recusal, this court cannot conclude that trial counsel's failure to file a motion to recuse before or during trial fell below an objective standard of reasonableness and prejudiced his case.  Thus, the Alabama Court of Criminal Appeal's determination that trial counsel was not ineffective was objectively reasonable.  *See Williams*, *supra*.

Based on the foregoing, this court concludes that Crowe is not entitled to relief with respect to his claims concerning Judge Reynold's refusal to recuse himself from the proceedings and trial counsel's ineffectiveness for failing to file a motion to recuse before or during the trial.

**(2)    The Excessive Sentence Claim**

21

Crowe contends that his sentence was unconstitutionally disproportionate to the crime. Specifically, he argues that his sentence of 340 years' imprisonment was several times greater than the average sentence for other offenders in Alabama.

On direct appeal, the Alabama Court of Criminal Appeals determined:

> . . . [Crowe's] claim that his sentences were excessive because they exceed the statewide average for first-time offenders convicted of rape in the second degree is not persuasive. It is well settled that "[w]here a trial judge imposes a sentence within the statutory range, this Court will not disturb that sentence on appeal absent a showing of an abuse of the trial judge's discretion." *Alderman v. State*, 615 So. 2d 640, 649 (Ala. Crim. App. 1992). "The exception to this general rule is that 'the appellate courts may review a sentence, which, although within the prescribed limitations, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights.'" *Brown v. State*, 611 So. 2d 1194, 1197 (Ala. Crim. App. 1992) quoting *Ex parte Maddox*, 503 So. 2d 786, 789 (Ala.), cert denied, 479 U.S. 932 (1986). Furthermore, "[t]he decision whether a sentence is to run consecutively or concurrently with another sentence is within the sound discretion of the trial judge." *Holmes v. State*, 497 So. 2d 1149, 1152 (Ala. Crim. App. 1986).
>
> Rape in the second degree and sodomy in the second degree are both Class B felonies. *See* §§ 13A-6-62(b) and 13A-6-64(b), Ala. Code 1975. A Class B felony is punishable by not more than 20 years' or less than 2 years' imprisonment. *See* § 13A-5-6(a)(2), Ala. Code 1975. [Crowe] was sentenced to 20 years' imprisonment for each of his convictions; these sentences were within the statutory range. Although [Crowe] presented evidence that the "average" sentence for first-time offenders is less than the statutory maximum and less than the sentences [Crowe] received, that evidence did not indicate whether the "average" sentence was the result of a single first-time conviction for rape in the second degree or the result of *multiple* convictions of rape in the second degree and sodomy in the second degree, as is the case here. Thus, we are not persuaded by [Crowe's]

22

> argument that his sentences were excessive because they
> exceeded the state average for first-time offenders.  We find no
> abuse of the trial court's discretion in sentencing [Crowe] to
> consecutive 20-year terms for his 17 convictions.

(State's Ex. RX-4, pp. 15-16.)

This Court must determine whether the Alabama Court of Criminal Appeal's decision to reject this disproportionate-sentence claim was an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.  The clearly established law on this issue is set forth in *Ewing v. California*, 538 U.S. 11 (2003); *Solem v. Helm*, 463 U.S. 277 (1983)*, and *Rummel v. Estelle*, 445 U.S. 263 (1980).     The Eighth Amendment's ban on cruel and unusual punishment "prohibits . . . sentences that are disproportionate to the crime committed."  *Solem*, 463 U.S. at 284.  In *Solem*, the Court identified three factors to determine whether a sentence is so disproportionate that it violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  463 U.S. at 292.  "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  *Rummell*, 445 U.S. at 272.  "'The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *Ewing*, 538 U.S. at 1186-87 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

This court has reviewed the record in this case and concludes that the Alabama Court

of Criminal Appeals' decision with respect to this Eighth Amendment claim was objectively reasonable.  *See Williams v. Taylor, supra.*  The decision of the state court was not contrary to, or an unreasonable application of, federal law nor an unreasonable determination of the facts in light of the evidence presented.  Consequently, Crowe is entitled to no relief with respect to this claim.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Michael Clayton Crowe be denied and that this case be dismissed with prejudice.  It is further

ORDERED that **on or before July 25, 2007**, the parties may file objections to the Recommendation.   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding

precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 12th day of July, 2007.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE